Mr. Bill J. Ford Arkansas State Bank Commissioner Tower Building, Suite 500 323 Center Street Little Rock, AR 72201-2613
Dear Mr. Ford:
This is in response to your request for an opinion on the following question:
 Would the Arkansas Regional Reciprocal Interstate Banking Act (Act 12 of 1988, Fourth Extraordinary Session) permit an acquisition of an emergency state or national bank charter issued for the purpose of acquiring the assets and liabilities of a failed savings and loan institution by a qualified out-of-state regional bank holding company in accordance with the emergency acquisitions section of the Arkansas Bank Holding Company Act (Arkansas Code Ann. § 23-32-307)?
In my opinion the answer to your question is "yes."
You note in your request that A.C.A. § 23-32-1803(d)(4) (found in the Regional Reciprocal Interstate Bank Act) provides that the Bank Commissioner can approve the acquisition of an Arkansas bank by an out-of-state regional* bank holding company only upon determining that certain factors are present and that certain conditions have been met. One of the conditions it that the Arkansas bank sought to be acquired has been "in existence and continuously operating for more than ten (10) years. . . ." A.C.A. § 23-32-1803(d)(4). Your question is whether this provision would prohibit the Commissioner from issuing a new state or national bank charter to an out-of-state regional bank holding company purchasing a failed Arkansas savings and loan association ("SL"), and wishing to obtain the charter to operate the failed SL as a newly formed bank. The new charter represents the "Arkansas bank" to be acquired, and it of course has not been in existence as a bank and continuously operating for ten years.
It is my opinion that this provision does not prohibit the issuance of a new charter in the context of an emergency acquisition of a failed SL.
The new Arkansas Regional Reciprocal Interstate Banking Act, as noted earlier, allows out-of-state regional bank holding companies to acquire Arkansas banks. Prior to such an acquisition, the bank holding company must submit an application with the Bank Commissioner setting out certain information. See A.C.A. § 23-32-1803(a). The Bank Commissioner may then approve the acquisition if he determines that certain factors are present, including the fact that the Arkansas bank has been in existence and operating continuously for ten years. This section of the new Interstate Banking Act does not specifically address failed acquisitions, but governs any acquisition of an Arkansas bank by an out-of-state regional bank holding company.
We must read the ten year requirement discussed above together with the emergency acquisition provisions of the Bank Holding Company Act of 1983, A.C.A. § 23-32-301 et seq. This is especially true because § 23-33-104(e) of the Interstate Banking Act specifically provides that nothing contained therein shall be construed to "alter, amend, or repeal the provisions for . . . emergency acquisition procedures for failed banks."
Sections 23-32-306 and 307 of the Bank Holding Company Act provide respectively: 23-32-306. It shall be unlawful for a bank holding company to directly or indirectly own or control more than one (1) subsidiary if one (1) or more of such subsidiaries has a de novo charter. 23-32-307.
 (a) The provisions of § 23-32-306 shall not prohibit the acquisition by a bank holding company** of any financial institution holding deposits insured by an agency or instrumentality of the United States Government, including specifically the Federal Deposit Insurance Corporation or the Federal Home Loan Insurance Corporation or the successors thereof, if an agency of the State of Arkansas or the United States having regulatory control of the institution has determined that an emergency exists with regard to the institution and has solicited bids for the acquisition of its assets and assumption of its liabilities.
 (b) A bank holding company desiring to acquire a subsidiary pursuant to the provisions of this section must make application to the Bank Commissioner for authority to make such an acquisition. The commissioner shall approve an adequate application.
"De novo charter" is defined at A.C.A. § 23-32-303(4) as:
 "De novo charter" means a charter for a bank for which application was filed after December 31, 1982, and which has been in existence for less than ten (10) years, but it does not include a charter which is issued in connection with the acquisition of assets and liabilities from a predecessor financial institution.
A new bank charter issued to a bank holding company in conjunction with the acquisition of a failed financial institution is thus not a "de novo charter" and the prohibition of § 23-32-306 does not apply. It must be noted, however, that this conclusion does not answer the question of whether under the Bank Holding Company Act the Commissioner can issue a brand new bank charter to a bank holding company acquiring a failed SL. We must look more closely at the provisions to reach this result. In this regard, note that § 23-32-307(a) provides that § 23-32-306 would not prohibit a bank holding company from acquiring "any financial institution" insured by "any instrumentally of the United States Government" This language clearly includes SL's insured by the federal government. Thus, § 23-32-306 does not prohibit a bank holding company from acquiring a failed SL. The question is whether it may obtain a new bank charter to operate the failed SL as a bank.
In addressing this issue, initial consideration must be given to what § 23-32-306 prohibits. This section prohibits a bank holding company from owning or controlling more than one "subsidiary" if one or more has a "de novo" charter. "Subsidiary" is defined at A.C.A. § 23-32-303(6) as including four different types of BANKS. Thus, § 23-32-306 prohibits bank holding companies from owning or controlling more than one bank if one or more has a de novo charter. Section 23-32-307, however, provides that this prohibition shall not prohibit the acquisition of a failed SL. Why would it be necessary to exempt the acquisition of a failed SL from the prohibitions of § 23-32-306 if the prohibition applies only to the owning and controlling of banks?
It may, in my opinion, reasonably be inferred from these provisions that the legislature contemplated that a bank holding company could convert a failed SL into a bank and thus might be in danger of violating § 23-32-306, but for the exemption granted in § 23-32-307(a). Thus, the Bank Holding Company Act does not prohibit the Commissioner from issuing a new bank charter to an out-of-state regional bank holding company for the purpose of converting a failed SL into a bank. In fact, the Bank Holding Company Act seems to contemplate just such an occurrence.
We must now reconcile these provisions with the "ten year" requirement found in the Regional Reciprocal Interstate Banking Act. Established rules of statutory construction dictate that seemingly contradictory provisions be reconciled, so far as practical, so as to make them consistent, harmonious and sensible. Gilbert v. Gilbert Timber Co.,19 Ark. App. 93, 717 S.W.2d 220, reh. den. 19 Ark. App. 93, 719 S.W.2d 284
(1986). The issue is whether the requirement that the Commissioner determine that the Arkansas bank sought to be acquired by an out-of-state regional bank holding company has been in existence and continuously operating for ten years, applies in the case of emergency acquisitions. If so, this requirement conflicts with the provisions of the Bank Holding Company Act noted above.
It is my opinion that the provisions do not conflict. In addition to the fact that the section of the Interstate Banking Act containing the ten year requirement does not specifically address emergency acquisitions, and in addition to the fact that the Interstate Banking act itself says that it should not be construed to amend or repeal procedures governing emergency acquisitions, several other provisions of that act specifically exempt emergency acquisitions from their purview. As noted earlier, the definition of a "de novo charter" does not include charters issued in connection with a failed acquisition. A.C.A. § 23-32-303(4). Additionally, branching limitations for both banks and savings and loan associations, to some extent are waived in the case of failed acquisitions. See § 23-32-1202(d) and § 23-37-404(f). See also A.C.A. § 23-33-104(a), which provides that "(n)otwithstanding any other provisions of the banking laws of this state, (the Commissioner may approve the sale of a failing state bank to a bank holding company)". Finally, I have attached a copy of Opinion No. 85-51, which involves a construction of A.C.A. § 23-32-307 and which provides with regard thereto as follows:
 While these provisions may be in conflict with other provisions of the State Banking Law, they are instituted only in emergency situations and would presumably override any conflicts there might be with other provisions of the Act due to the emergency situation under which they would be implemented. . . .
It is thus my opinion that the Arkansas Regional Reciprocal Interstate Banking Act does not prohibit the Bank Commissioner from issuing a new bank charter to an out-of-state regional bank holding company which purchases the assets of a failed savings and loan association and which seeks to operate it as a bank. In fact, A.C.A. § 23-32-307(b) suggests that the Commissioner, if faced with an adequate application, not only MAY approve the application, but SHALL approve it.
As a final note, it is incumbent upon us to note that regardless of the prohibitions or procedures provided by state law on this issue, the provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (signed by the President and effective from August 9, 1989) appear to give the FDIC preemptive authority in the field of acquisitions of failed savings and loan associations.***
It is clear under any new federal act that the FDIC "notwithstanding any provision of state law" can authorize the ACQUISITION of a failed SL by "any company." 12 U.S.C. § 1823(k)(1)(A()(i). The state bank commissioner is afforded an opportunity to object, which objection can be overridden by a 75% vote of the FDIC Board of Directors.12 U.S.C. § 1823(k)(F)(B). It is less clear whether the FDIC could override the state commissioner's refusal to issue a new state bank charter to an entity acquiring a failed SL, although the new federal act does provide that the FDIC can approve the "conversion" of a savings association insurance fund (SAIF) member to a bank insurance fund (BIF) member, in the case of a failed acquisition. See 12 U.S.C. § 1214(d)(2)(C)(ii). The Joint Explanatory Statement of the Committee of Conference, in Title II notes that "(t)he conversion provisions permit a savings association to switch to a bank charter so long as it remains a SAIF member during the 5-year moratorium." The language of the new act and the language of the Committee thus suggest that the FDIC may have preemptive authority with regard to the issuance of a new charter, as well as with regard to the acquisition itself.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
NOTE: Opinion 85-51 has been added into the system in the AG/85 file.
* The "region which is referred to in the act includes Arkansas, Tennessee, Missouri, Mississippi, Texas, Louisiana, Oklahoma, Alabama, Florida, Georgia, Maryland, North Carolina, South Carolina, Virginia, Kansas, Nebraska, the District of Columbia, and West Virginia. See A.C.A. § 23-32-1802(1).
** "Bank holding company" is defined in pertinent part at § 23-32-303, as amended by Act 702 of 1989, as any company, FOREIGN or domestic. . . ." (Emphasis added.)
*** It should be noted, however, that 12 U.S.C. § 1823(k)(A)(1)(vi) provides that state laws "restricting or limiting the activities of a savings association on behalf of another entity" are not preempted.